UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LEONARD COLLINS,

Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No.  2:13-CV-00125-JTR

ORDER GRANTING PLAINTIFF'S MOTION  FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF Nos.  15, 21.  Attorney Dana C. Madsen represents Plaintiff; Special Assistant United States Attorney Diana Andsager represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 13.  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

On April 26, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, along with a Title XVI application for supplemental security income, both alleging disability beginning May 1, 2006.  Tr. 25; 156.  Plaintiff alleged he was disabled due to diabetes, COPD, pancreatitis, diabetic neuropathy, sleep apnea, gout, chronic bronchitis, asthma, arthritis, low back problems, vision issues, and carpal tunnel syndrome.  Tr. 103.  Plaintiff's

claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ).  Tr. 75-81; 92-120.    A hearing was held on September 20, 2011, at which vocational expert Jinnie Lawson, medical expert Alexander White, and Plaintiff, who was represented by counsel, testified.  Tr. 41-74.  ALJ Marie Palachuk presided.  Tr. 41.  The ALJ denied benefits on October 12, 2011.  Tr. 25-36.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and, thus, they are only briefly summarized here.  At the time of the hearing, Plaintiff was 53 years old, five-foot eleven inches tall, weighed 233 pounds, completed the tenth grade, and he later obtained a GED.  Tr. 51.  He was divorced and lived alone.  Tr. 51.

He worked as a dump truck driver for several companies, and he also worked briefly mixing concrete, cutting steel and washing dishes.  Tr. 52-53.  He testified that he stopped driving trucks because after he was prescribed insulin for his diabetes, he was "blind" for about three weeks.  Tr. 54.  He said he tried to drive semi-trucks, but he could not master filling out the required driving logs.  Tr. 67.

Plaintiff also testified that his Type II Diabetes makes him tired and weak, he has chronic foot and ankle pain, and he cannot walk far or he becomes light-headed, dizzy, and sometimes nauseous.  Tr. 55.  He said his hands are always swollen and he cannot hold a cup longer than five minutes or it will drop out of his hands.  Tr. 56.

Plaintiff also testified that he never leaves his apartment unless he has to go to a doctor appointment or grocery shopping.  Tr. 60.  He explained that when he returns with groceries, he needs help to carry the groceries up the two flights of stairs to his apartment.  Tr. 60.  After these trips, he described his condition as

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

"totally exhausted." Tr. 57.  He said he can walk a half a block before he runs out of breath.  Tr. 61.

Plaintiff said he does very little cleaning, and it takes him three or four days to clean his apartment.  Tr. 63.  He does laundry about once a month, and he cooks mostly by using the microwave.  Tr. 63.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales, 402 U.S. 389, 401 (1971).*  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

(9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-99.  This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004).  If a claimant cannot make an adjustment to other work in the national economy, the claimant is deemed disabled. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 11, 2009, his alleged onset date. Tr. 27.  At step two, the ALJ found Plaintiff suffered from the severe impairments of diabetes mellitus, pancreatitis secondary to diabetes mellitus,

sensory neuropathy secondary to diabetes mellitus, chronic obstructive pulmonary disease, mild, obstructive sleep apnea, controlled with CPAP, degenerative disc disease, mild and depressive disorder.  Tr. 27.  At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments.  Tr. 28.  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work:

> The claimant can perform all postural movements occasionally except he can never climb ladders, ropes, or scaffolds.  The claimant can perform manipulative movements bilaterally frequently.  The claimant should avoid concentrated exposure to cold and even moderate exposure to vibration, respiratory irritants, and hazards.  The claimant is able to maintain attention and concentration for up to two-hour intervals between regularly scheduled breaks.  The claimant can have only superficial contact with the public and/or coworkers.  It would be best for the claimant to deal with things rather than people.

Tr. 30.  At step four, the ALJ found that Plaintiff is not capable of performing past relevant work.  Tr. 34.  The ALJ determined, in light of Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as escort vehicle driver, pricer/marker and copy machine operator.  Tr. 35.  The ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  Tr. 36.

## ISSUES

Plaintiff contends that the ALJ erred by rejecting the opinions of W. Scott Mabee, Ph.D., and Karen Bichler, ARNP.  ECF No. 15 at 12-16.[1]

---

[1]In his argument that the ALJ failed to properly credit the medical opinion evidence, Plaintiff mentions the opinions of Melody Bemis, ARNP, and Sydney J. Lindgren, MS, NCC.  ECF No. 15 at 13.  However, Plaintiff provides no analysis

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

**DISCUSSION**

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Lester*, 81 F.3d at 830.  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Id.*  Where the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Where a medical source's opinion is based largely on the Plaintiff's own subjective description of symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject that opinion.  *Fair v. Bowen*, 885 F.2d at 605; *and see Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (Commissioner appropriately discounted claimant's nonexertional impairment complaints due to lack of corroborative evidence and consulting physician's suspicion that claimant was malingering).  When providing reasons for rejecting opinion evidence, the ALJ should provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).   The ALJ must do more than merely state his conclusions: "[h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  The ALJ must explain the weight assigned to "other" sources to the extent

---

or argument related specifically to these providers, and thus the court does not address the ALJ's analysis of these medical opinions.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p.

## A.    W. Scott Mabee, Ph.D.

Plaintiff contends that the ALJ failed to properly credit the opinions of W. Scott Mabee, Ph.D.  Specifically, Plaintiff argues that Dr. Mabee was entitled to rely upon Plaintiff's subjective complaints because he performed an extensive evaluation of Plaintiff that included objective testing.  ECF No. 15 at 14-15.  Additionally, Plaintiff argues that Dr. Mabee's status as an examining physician and the purpose of the evaluation are improper reasons to discount the opinion.  ECF No. 15 at 14-15.

On February 3, 2011, W. Scott Mabee, Ph.D., examined Plaintiff and completed a Psychological/psychiatric evaluation.  Tr. 496-510.  Dr. Mabee referenced Plaintiff's prior evaluation performed in May 2008 at the same clinic, and indicated it was "unlikely" Plaintiff's 2008 WAIS-III test scores "accurately reflected his functioning" because he gave "very poor effort."  Tr. 496.  Similarly, in the 2011 evaluation, Dr. Mabee related that Plaintiff's MMPI-2-RF profile as invalid "due to excessive endorsement of symptoms."  Tr. 499.  Dr. Mabee interpreted these results to reveal that Plaintiff has "a tendency to magnify his difficulties and views his life in a particularly negative manner.  Throughout his evaluation, he provided very poor effort on all tasks.  This appears to be a pattern for him."  Tr. 499.  Dr. Mabee explained that Plaintiff's psychological impairments would likely prevent him from maintaining employment:

> Currently, Mr. Collins' mind is so preoccupied with his disabilities and issues, he has little energy to devote to outside activities.  He reports difficulty with others and would need to work as independently as possible.  It is unlikely he would be able to obtain or maintain employment in a traditional setting.

Tr. 498.  Dr. Mabee diagnosed Plaintiff with undifferentiated somatoform disorder, major depressive disorder, recurrent, moderate, paranoid features and borderline

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

intellectual functioning.  Tr. 497.

In the check-the-box portion of the form, Dr. Mabee rated Plaintiff with marked impairments in the abilities to: (1) understand, remember, and persist in tasks by following complex instructions of three or more steps; (2) communicate and perform effectively in a work setting with public contact; (3) maintain appropriate behavior in a work setting.  Tr. 498.  After each check-the-box rating, Dr. Mabee provided an explanation, that included, "poor attention, motivation, and exhibited extremely poor effort on both visits to this clinic;" "[mental health] and disordered personality"; and "will be inconsistent in attendance and poor in performance; limited interpersonal skills."  Tr. 498.

The ALJ gave several reasons for giving little weight to Dr. Mabee's opinion: (1) the MMPI was invalid; (2) the opinion was largely based upon Plaintiff's subjective complaints; (3) the opinion was provided on a check-the-box form with "few objective findings"; (4) the evaluation was conducted in conjunction with an application for state welfare assistance; and (5) Dr. Mabee was not a treating source.  Tr. 33.

The ALJ's first three reasons for giving little weight to Dr. Mabee's opinion are not supported by the record.  First, the MMPI test score was deemed invalid, but Dr. Mabee's interpretation of those results were not that Plaintiff was malingering as Defendant suggests, but instead, poor effort is a symptom of Plaintiff's mental health impairment.  Tr. 498-99.  As a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999).

The ALJ also rejected the opinion because it was largely based upon Plaintiff's subjective complaints.  The record does not support this assertion.  Dr. Mabee indicated he reviewed Plaintiff's record and test scores from his 2008

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

testing with the same clinic.  Tr. 496.  Additionally, Dr. Mabee performed a mental status exam, administered the MMPI-2-RF, and observed several of Plaintiff's symptoms (i.e., depression, poor attention and concentration/memory issues, paranoia, preoccupation with physical health issues, poor effort when asked to complete tasks) during the examination.  Tr. 497.  Dr. Mabee did not find Plaintiff was malingering or deceptive.

In sum, Dr. Mabee performed two examinations of Plaintiff, several years apart, and conducted extensive objective psychological testing.  He provided an explanation for each of his ratings.  As a result, the record reveals Dr. Mabee did not simply rely upon Plaintiff's subjective complaints in arriving at his opinions.  *See Regennitter v. Commissioner of SSA,* 166 F.3d 1294, 1300 (9th Cir. 1999) (ALJ erred by discounting examining doctor opinion on basis that he accepted patient's subjective complaints at "face value").

Next, the ALJ gave little weight to Dr. Mabee's opinion because it was provided on a check-the-box form with "few objective findings."  Tr. 33.  An ALJ may properly reject a treating physician's opinion that is conclusory and unsupported by clinical findings, particularly check-the-box style forms.  *See Batson*, 359 F.3d at 1195 (holding that the ALJ did not err in giving minimal evidentiary weight to the opinions of the plaintiff's treating physician where the opinion was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of the plaintiff's medical condition, and was based on the plaintiff's subjective descriptions of pain).

However, the record in this case does not support the ALJ's reasoning.  In completing the Psychological/psychiatric form, Dr. Mabee provided significantly more information than just checked boxes.  For example, Dr. Mabee provided details about Plaintiff's records he reviewed, including previous test results.  Tr. 496.  He also provided a list of multiple symptoms he observed, and he described how each symptom would affect Plaintiff's work activities.  Tr. 497.  Dr. Mabee

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

also provided a narrative of a typical day for Plaintiff, and he provided a personal observation after each checked box assessment. Tr. 497-98. Finally, Dr. Mabee provided "additional remarks" that explains why Plaintiff magnifies his difficulties and views his life in a particularly negative manner. Tr. 499. Dr. Mabee also provided eleven pages of Plaintiff's test results. Tr. 500-510. Because Dr. Mabee provided more than checked boxes, and instead he provided interpretation and opinion based upon his review of Plaintiff's previous test results and his examination, the ALJ's reason for discounting Dr. Mabee's opinion is not supported by the record.

The final two reasons the ALJ gave for discounting Dr. Mabee's opinion – because the evaluation was conducted in conjunction with an application for state welfare assistance and because Dr. Mabee was not a treating source – are contrary to caselaw. First, it is well-established that the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting the reports. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). Second, an examining physician's opinion is generally entitled to more weight than a non-examining physician's opinion. The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. An examining physician's opinion may not be discounted merely because the physician is not a treating physician. As a result, the ALJ erred by discounting Dr. Mabee's opinion because it was obtained for the purpose of welfare benefits and because he was an examining medical provider.

The vocational expert testified that when the limitations assessed by Dr. Mabee are considered as part of Plaintiff's RFC, the Plaintiff would not be able to perform any work. Tr. 73. As such, this case requires remand for the ALJ to reconsider Dr. Mabee's opinion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

**B.    Karen Bichler, ARNP**

Plaintiff contends that the ALJ relied upon improper factors in discounting Ms. Bichler's opinions, including that Plaintiff was noncompliant with treatment when examined, the fact the opinions were obtained in connection with an attempt to qualify for state assistance, and her opinions were inconsistent with Plaintiff's testimony.  ECF No. 15 at 16-17.

On April 3, 2009, Karen D. Bichler, ARNP, signed a Physical Evaluation form.  Tr. 275-78.  The form was left blank, and indicated "see chart note" on two pages, and an April 3, 2009, Progress Note was appended to the form.  Tr. 276-77; 279-82.   In the Note, Ms. Bichler indicates Plaintiff presented for a GAU evaluation, and he suffered from asthma/COPD complicated by chronic bronchitis and recurrent pneumonia, with 3-4 episodes of pneumonia in the past year.  Tr. 279.  Ms. Bichler also noted Plaintiff had severe hyperlipidemia, complicated by pancreatitis, for which he was hospitalized in November 2008.  Tr. 279.   The note also indicates Plaintiff has Type II Diabetes, poorly controlled, and he has hypertension.  Tr. 279.

Ms. Bichler concluded that Plaintiff required an evaluation and stress test by a cardiologist, and she recommended referral to a pulmonologist.  She found that his impairments posed moderate, or significant, interference with walking, lifting, handling, carrying and seeing.  Tr. 280.  Ms. Bichler opined that Plaintiff's overall work level is severely limited, and she noted he is unable to lift at least two pounds, or unable to stand or walk.  Tr. 280.  Ms. Bichler added a comment: "With the level of Mr. Collins' lipids, he needs a stress test, and it is likely that he will end up having open heart surgery.  I ordered some tests and recommended specialist referrals, but Mr. Collins is unable to work."  Tr. 281.

The ALJ rejected Ms. Bichler's opinion for three reasons:  (1) "the opinion was given when [Plaintiff] was non-compliant with treatment for pancreatitis and was thus more impaired"; (2) "the evaluation was conducted in connection with

determining eligibility for state welfare assistance and thus the claimant had incentive overstate his symptoms and complaints"; (3) the opinion was "inconsistent with the claimant's own testimony of his limitations" related to lifting, standing and walking.  Tr. 32.  An impairment that can be controlled by treatment or medication is not considered disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

Plaintiff asserts that the ALJ's reliance upon Plaintiff's noncompliance with medication is immaterial, in light of Plaintiff's continued critical pancreatitis condition.  ECF No.15 at 16.  It is not clear from the report that Plaintiff was not compliant with pancreatitis treatment.  Ms. Bichler noted that Plaintiff has severe hyperlipidemia, complicated by pancreatitis, and explained "many lipid lowering agents aggravate pancreatitis."  Tr. 279.  In other words, Plaintiff's medications for his hypertriglyceridemia can trigger an attack of pancreatitis.  Additionally, as Plaintiff points out, he was subsequently admitted to the hospital with repeated episodes of acute pancreatitis. Tr. 324-31;[2] 311-19;[3] 458-77.[4]  As a result, the

---

[2]July 26-29, 2009, Plaintiff was admitted for pancreatitis.  Doctors opined the cause of the pancreatitis was a significant elevation of triglycerides.  Tr. 324.  Chart notes also indicate that Plaintiff's elevated blood sugars were "difficult to control" and required "high doses" of insulin.  Tr. 324.

[3]November 18-20, 2009, Plaintiff was admitted with "acute pancreatitis."  Tr. 311.  Notes indicate Plaintiff was taking insulin as prescribed, but nevertheless, his blood sugars were significantly elevated.  Tr. 311.

[4]March 3-6, 2011, Plaintiff was admitted with acute pancreatitis.  Notes indicate that contrary to Plaintiff's belief that his diabetes caused the pancreatitis,

record does not support the ALJ's reasoning that Ms. Bichler's opinion should be discounted because at the time she provided her opinion, Plaintiff was noncompliant with medications.[5]

The ALJ also rejected Ms. Bichler's opinion because it was obtained in the process of Plaintiff's application for state assistance. Tr. 32. As explained above, the purpose for which a medical report is obtained does not provide a legitimate basis for rejecting the report. *Lester*, 81 F.3d at 832 ("An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner."); *see also Reddick,* 157 F.3d at 726 ("[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.").

The ALJ's final reason for rejecting Ms. Bichler's evaluation was that her opinion was "inconsistent with the claimant's own testimony of his limitations" related to lifting, standing and walking. Tr. 32. Specifically, the ALJ cited Ms. Bichler's contention that Plaintiff could not lift two pounds and was unable to stand or walk, compared with Plaintiff's testimony that he could lift and carry a 12-pack of soda and walk half a block. Tr. 32.

A contradiction between a medical opinion and Plaintiff's admitted activities is a specific and legitimate reason for discounting a medical provider's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (noting that a treating

"previous episodes were due to hypertriglyceridemia," and a later note indicated "ACE inhibitors can also cause this." Tr. 458; 462.

[5]It is notable that in two instances, hospital records reveal that Plaintiff's mental limitations may be a contributing factor in his inability to understand and comply with instructions relating to medication compliance and management of his condition. Tr. 311; 573.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

physician's opinion may be discounted where it is inconsistent with a claimant's level of functioning).  In this case, Plaintiff testified that he is able to walk half a block until he needs to rest, he can stand in line for no more than 15 minutes and sit in chair for half an hour.  Tr. 62.   It is unreasonable to literally interpret Ms. Bichler's assessment that Plaintiff was "unable to stand or walk" because the records do not indicate Plaintiff was unable to walk into the examination room.  It is more likely that Ms. Bichler intended that Plaintiff would be unable to walk or sit long enough to complete an eight-hour workday.

Also, when asked how much he could "lift and carry," Plaintiff responded "[a]12-pack of soda and that's about it."  Tr. 62.  The ALJ cited this fact as contrary to Ms. Bichler's opinion that Plaintiff can carry no more than two pounds. Tr. 32.  Plaintiff argues that Ms. Bichler's opinion is reasonably interpreted as indicating Plaintiff was able to only lift two pounds consistently, throughout the day.  ECF No. 15 at 17.  Plaintiff also testified that he can purchase groceries and put them in his car, he has to have someone help him carry them up to his apartment.  Tr. 60.

Because this case must be remanded, the ALJ may request clarification, further develop the record on this issue, or reconsider Ms. Bichler's opinion and provide a new analysis.  Generally in Social Security cases, the ALJ has a special duty to "develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  An ALJ's duty to further develop the record is triggered when ambiguous evidence exists, or when the record is inadequate to allow for the proper evaluation of the evidence.  *Id.* at 459-460; *accord Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (no duty exists to re-contact doctors if the evidence in the record is adequate to make determination.).

///

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

## CONCLUSION

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the ALJ should reconsider the medical opinions and if necessary, determine a new RFC, and conduct a new step four and step five assessment. Accordingly,

**IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED** and remanded for additional proceedings.

2.    Defendant's Motion for Summary Judgment, **ECF No. 21**,  is **DENIED**.

3.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and the file shall be CLOSED.

DATED February 10, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE